UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

ENTERPRISE MANAGEMENT
LIMITED, INC., MARY LIPPITT,

                Plaintiffs,

    v.

CONSTRUX SOFTWARE BUILDERS,
INC, STEVE C. MCCONNELL,

                Defendants.

CASE NO. 2:19-CV-1458-DWC

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

Currently pending before the Court are Defendants Construx Software Builders, Inc. and Steve C. McConnell's Partial Motion for Summary Judgment and Plaintiffs Enterprise Management Limited, Inc. and Mary Lippitt's Motion for Summary Judgment. Dkts. 139, 140.[1]

Defendants assert there is no genuine issue of material fact regarding whether Defendants had access to Plaintiffs' Aligning Chart and, therefore, dismissal of Plaintiffs' claims related to the Aligning Chart is appropriate. Defendants also seek a summary judgment finding that Plaintiffs should be limited (at most) to a single statutory damages award. Plaintiffs assert there

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 11, 12.

is no genuine issue of material fact regarding Defendants' copying of Plaintiffs' Managing and Aligning Charts and summary judgment in favor of Plaintiffs is appropriate on the issue of Defendants' copying of the Managing Chart and copyright infringement of the Aligning Chart.

After consideration of the relevant record, the evidence shows Defendants did not have access to the Aligning Chart. Further, Defendants' Chart is not strikingly similar to the Aligning Chart. Therefore, the Court finds summary judgment in favor of Defendants is appropriate as to Plaintiff's copyright infringement claim regarding the Aligning Chart. There is, however, a genuine issue of material fact regarding whether Plaintiffs have ownership of a valid copyright registration for the Managing Chart. Additionally, there is a genuine issue of material fact regarding whether the charts at issue in this case were copied from a different or prior common source. Therefore, Plaintiff has not shown a summary judgment finding that Defendants' Chart is strikingly similar to the Managing Chart is appropriate. Finally, the Court finds only one statutory award is permissible, in the event infringement can be proven.

For these reasons, Defendants' Partial Motion for Summary Judgment (Dkt. 139) is granted and Plaintiffs' Motion for Summary Judgment (Dkt. 140) is denied.

## I.    Background

In the First Amended Complaint, Plaintiffs allege Defendants unlawfully copied and distributed Lippitt's works or derivations based on her works, which are owned by Enterprise, without permission. Dkt. 29.[2] The following two charts are Plaintiffs' alleged copyrighted works:

---

[2] Plaintiffs also allege Defendants used Lippitt's name to benefit their business without Lippitt's permission in violation of Washington State's Consumer Protection Act ("CPA") and Personality Rights Act. Dkt. 29. These claims were dismissed by the Court on May 29, 2020. Dkt. 37.

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 2





Plaintiffs allege the first chart, Managing Complex Change ("Managing Chart"), is protected under U.S. Copyright Registration No. TX 2-124-202 ("202"). *See* Dkt. 29, ¶ 22. Plaintiffs allege the second chart, Aligning for Success ("Aligning Chart"), is protected under U.S. Copyright Registration Nos. TXu 956-226 ("226") and TX 50827-350 ("350"). *See id*. at

¶23. Plaintiffs contend Defendants violated the Copyright Act through the use of the following, or similar, chart ("Defendants' Chart"):



Dkt. 130 at 9; *see* Dkt. 29.

In the February 21, 2021 Order Granting in Part and Denying in Part Defendants' Motion for Summary Judgment ("Order on Summary Judgment"), the Court found the Managing Chart was not protected under Registration No. 202. Dkt. 51. The Court also found neither Registration No. 226 nor 350 were derivatives of the Managing Chart or incorporated the Managing Chart into the registrations. *Id*. As the evidence failed to show Plaintiffs registered the Managing Chart, the Court granted summary judgment in favor of Defendants as to the copyright infringement claims arising from the Managing Chart. *Id*. The Court, however, found Plaintiffs raised a genuine issue of material fact as to Plaintiffs' Aligning Chart, and that Plaintiffs could "try [their] claims that [Defendants] infringed the 226 registration and the 350 registration." *Id*. at 13. In sum, after the Court ruled on a Motion to Dismiss and the Motion for Summary Judgment, the only remaining claim for trial was whether Defendants were liable for copyright infringement of Plaintiffs' Aligning for Success chart. *See* Dkt. 37, 51.

This case proceeded to trial, which took place from March 22 – March 25, 2022. *See* Dkts. 91, 93, 94, 96. The jury rendered a defense verdict and Plaintiffs appealed. Dkts. 98, 101, 110. On appeal, relevant to the pending motions before this Court,[3] the Ninth Circuit determined "Lippitt raised a genuine dispute whether she registered the Managing Complex Change chart directly (in the 202 registration certificate) or whether she registered elements of that chart by registering the Aligning for Success chart (in the 226 registration certificate or the 350 registration certificate)[.]" Dkt. 130 at 19-20. As a result, the Ninth Circuit reversed the grant of summary judgment and vacated the jury verdict because Plaintiffs were prevented from introducing relevant evidence. *See id*. at 20.

Defendants have now filed a Motion for Partial Summary Judgment (Dkt. 139) and Plaintiffs have filed a Motion for Summary Judgment (Dkt. 140). In Defendants' Motion, Defendants seek judgments finding that they did not copy the Aligning Chart and that, in the event Plaintiffs might be able to prove infringement, a single statutory damages award is, at most, permissible. Dkt. 139. In their Motion, Plaintiffs request "the Court conclude on summary judgment that the Auburn chart and the accused charts are strikingly similar to Dr. Lippitt's charts." Dkt. 140 at 18. And, "[b]ecause there is further no dispute that Dr. Lippitt holds a valid copyright at least to her Aligning chart, the Court should enter summary judgment in Dr. Lippitt's favor on her claim of copyright infringement." *Id*. The Motions have been fully briefed and the Court heard oral argument on February 7, 2024. *See* Dkts. 139-142, 144-152.

## I.      Standard of Review

Summary judgment is proper only if the pleadings, discovery, and disclosure materials on file, and any affidavits, show that there is no genuine dispute as to any material fact and that the

---

[3] The Ninth Circuit also found a jury instruction was incorrect. Dkt. 130. As the jury instruction is not relevant to the pending motions, the Court will not discuss it at this time.

1   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

2   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

3   showing on an essential element of a claim in the case on which the nonmoving party has the

4   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of

5   fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

6   the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

7   (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

8   metaphysical doubt"); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

9   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

10  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

11  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

12  626, 630 (9th Cir. 1987).

13  **II.   Requests to Strike**

14      Defendants have filed two surreplies requesting the Court strike exhibits and arguments

15  presented by Plaintiffs. *See* Dkts. 152, 161. Defendants contend Plaintiffs asserted new evidence

16  or argument for the first time in the reply and supplemental reply. Dkts. 152, 161.

17      "It is well established that new arguments and evidence presented for the first time in [a]

18  Reply are waived." *Docusign, Inc. v. Sertifi, Inc.*, 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006)

19  (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). While the court may

20  refuse to consider evidence submitted for the first time in a reply, *Zamani v. Carnes*, 491 F.3d

21  990, 997 (9th Cir. 2007), the Court may consider evidence and argument submitted with a reply

22  that is responsive to arguments raised in the non-moving party's brief in opposition. *See PSM*

23  *Holding Corp. v. Nat'l Farm Fin. Corp.*, 2013 WL 12080306, at *4 (C.D. Cal. Oct. 8, 2013),

24

*aff'd in part*, 884 F.3d 812 (9th Cir. 2018). "[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)).

Defendants state the following evidence and argument were raised for the first time in Plaintiff's reply (Dkt. 150) and should be stricken: (1) Exhibits K and L (Dkt. 151) and related argument; (2) argument and citation to excerpts of the Ninth Circuit appeal (Dkt. 151 at 2-3, 11); (3) Plaintiffs' references to a "recently discovered" chart; (4) any new citation to a prior Lippitt declaration (*see* Dkt. 151 at 4); (5) new arguments drawing from trial testimony contained in Docket entry 141, Exhibit I; and (6) arguments related to Plaintiffs' requests for relief. Dkt. 152. Defendants also assert the following evidence and argument was raised for the first time in plaintiff's supplemental reply (Dkts. 159, 160): Exhibits M, N, and O. Dkt. 161.

The Court has reviewed the relevant documents and finds Plaintiffs' arguments and citations to new evidence are arguably responsive to Defendants' responses. However, any evidence and argument submitted in Plaintiffs' reply or supplemental reply will not be considered by the Court if the evidence and argument was not responsive to arguments raised by Defendants in the response or supplemental response.

Only admissible evidence may be considered in ruling on a motion for summary judgment. *Orr v. Bank of America, NT & SA,* 285 F.3d 764, 773 (9th Cir. 2002); *see also* Fed. R. Civ. P. 56(e). A party may object to cited documentation asserting the material cited would not be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible in evidence, and must show the declarant or affiant is competent to testify on the matters stated. Fed. R. Civ. P.

56(c)(4). Objections to evidence because the evidence is irrelevant, speculative, argumentative, vague and ambiguous, or constitutes an improper legal conclusion is duplicative of the summary judgment standard itself. *See Burch v. Regents of University of California,* 433 F.Supp.2d 1110, 1119–20 (E.D. Cal. 2006). Summary judgment can only be awarded when there is no genuine dispute of *material* fact. *See* Fed. R. Civ. P. 56. "The Court cannot rely on irrelevant facts, and thus relevance objections are redundant." *Gaub v. Prof'l Hosp. Supply, Inc.*, 845 F. Supp. 2d 1118, 1128 (D. Idaho 2012). Therefore, regardless of whether evidence is stricken, the Court will only consider relevant evidence in deciding the Motions for Summary Judgment.

### III. Discussion

A. *Background*

The evidence shows McConnell created Defendants' Chart after attending a presentation in November 2013. Dkt. 139-1 at 3. Defendants' Chart is:



Dkt. 130 at 9.

McConnell adapted his chart from the Auburn Chart that was shown during the presentation. *Id*. The Auburn Chart is:



Dkt. 139-2. As seen in the Auburn Chart, the Auburn Chart includes: "Adapted from Knoster, T. (1991) Presentation at a TASH Conference, Washington DC." *Id*. It also states "{Adapted by Knoster from Enterprise Group Ltd.}." *Id*.

Dr. Timothy Knoster's Chart, as shown in his book, is:



Dkt. 139-3. Knoster's Chart includes: "Adaptation of Ambrose's (1987) managing complex change model." *Id*.

Knoster testified he based his chart on a chart from Dr. Delores Ambrose that was developed in 1987. Dkt. 139-4 at 4. His colleague received materials, including the chart, while attending a training and shared the materials with Knoster. *Id*. Knoster has not seen any of Lippitt's original works. *Id*. at 6. In 2011, Lippitt contacted Knoster and claimed that she was the original author of the chart. *Id*. Knoster tells people Lippitt is the original author of the chart based on Lippitt's representations to him. *Id*.

Lippitt states she developed a chart that she titled "Managing Complex Change" in the 1980s. Dkt. 142, Lippitt Dec., ¶ 5. Lippitt states she obtained a copyright (the 202 registration) in 1987 of a presentation titled, "Transition: Accomplishing Organization Change." *Id*. at ¶ 6. Lippitt states the 202 registration contained her Managing Chart. *Id*. at ¶ 7. The Managing Chart is:



*Id*. There is no evidence confirming the contents of what was included in the 202 registration.

1       In 2000, Lippitt obtained a copyright for her updated organizational change chart, now

2  titled "Aligning for Success." Dkt. 142, Lippitt Dec., ¶ 9. The Aligning Chart is:



12  *Id.*

13       Plaintiff also contends that, in October of 2023, she found a version of her Transition:

14  Accomplishing Organization Change presentation dated 1991. Dkt. 146, Lippitt Dec., ¶ 3. She

15  states this presentation shows the evolution of her change chart. *Id*. at ¶ 4. The chart included in

16  the 1991 materials is as follows ("1991 Chart"):

1    Dkt. 146 at 15.

2        B.  *Previous Summary Judgment Order*

3        The Court notes it previously determined there was circumstantial evidence of access

4    because of similarities between the Aligning Chart and Defendants' Chart "outweigh[ed] any

5    doubts about access at th[at] stage in the case." Dkt. 51 at 13. However, at trial, Plaintiffs failed

6    to show any direct or circumstantial evidence showing Defendants or the creators of the Auburn

7    Chart had access to the Aligning Chart. Therefore, the Court finds the Order on Summary

8    Judgment (Dkt. 51) is not binding or relevant to the pending Motions before the Court.

9        C.  *Relief Requested in Pending Motions for Summary Judgment*

10       Defendants assert there is no genuine issue of material fact regarding whether Defendants

11   copied the Aligning Chart. Dkt. 139. Defendants contend that, because there is no evidence they

12   had access to or accessed the Aligning Chart, Defendants could not have copied the Aligning

13   Chart and summary judgment is appropriate. *Id*.

14       Plaintiffs' Motion asks the Court to "conclude on summary judgment that the Auburn

15   [C]hart and the accused charts are strikingly similar to Dr. Lippitt's charts" and because

16   McConnell copied a copy (derivative)[4] of Lippitt's charts "the Court should enter summary

17   judgment in Dr. Lippitt's favor on her claim of copyright infringement." Dkt. 140 at 18.

18   Plaintiff's proposed order asks that "summary judgment be entered in Dr. Lippitt's favor." Dkt.

19   144 at 3. Defendants raise objections to the clarity of the relief requested in Plaintiffs' Motion for

20   Summary Judgment. Dkt. 149. Defendants state Plaintiffs' use of the term "summary judgment"

21   is "too vague to understand whether it means both or only one of the Managing and Aligning

22   charts were accessed and copied, whether only one or all three registrations were implicated by

23   ───────────────

24       [4] The derivative chart in this case is the Auburn Chart. *See* Dkt. 140.

1    it, or whether it applies to both McConnell and Construx, separately or jointly." *Id*. at 1-2.

2    Defendants contend they are prejudiced by the ambiguities in Plaintiffs' Motion. *Id*. at 2.

3           "A party may move for summary judgment, identifying each claim or defense--or the part

4    of each claim or defense--on which summary judgment is sought." Fed. R. Civ. P. 56(a). In

5    Plaintiffs' Motion, Plaintiffs state the accused charts and the Auburn Chart "bear an uncanny

6    resemblance to Dr. Lippitt's charts" and that "even considering the differences between the

7    charts, the similarities are so extensive that it is not possible for one to have arisen independently

8    of the other. It is therefore appropriate for the Court to conclude, as a matter of law, that the

9    charts are strikingly similar." Dkt. 140 at 2.

10          The Court agrees with Defendants that Plaintiffs' briefing frequently blurs charts,

11   registrations, and third party works without isolating argument to a particular chart or

12   comparison between charts. Plaintiffs use of the term "enter summary judgment" lacks the

13   specificity necessary to meet the Rule 56(a) standard. However, Plaintiffs do state in their

14   Motion that:

15           Dr. Lippitt may ultimately be able to prove that Mr. McConnell, through his internet
             searching, directly saw her charts, but for the purposes of this Motion, **Dr. Lippitt**
16           **analyzes just Mr. McConnell's claim that he copied the Auburn chart**. For the
             reasons set forth below, it does not matter whether he copied Dr. Lippitt's chart
17           directly or whether he copied it indirectly via his copying of the Auburn chart. **Dr.**
             **Lippitt can prevail by showing either** that Mr. McConnell's chart is strikingly
18           similar to her chart—thus supporting an inference of copying directly from her
             chart— **or** by showing that Mr. McConnell copied a chart that is itself strikingly
19           similar to her chart—thus supporting the inference that that chart copied her chart**.

20   Dkt. 140 at 9 (emphasis added). Therefore, as to Plaintiffs' Motion, the Court will only discuss

21   whether Plaintiffs have shown there is no genuine issue of material fact regarding whether

22   Defendants' Chart is strikingly similar to the Managing and Aligning Charts and whether the

23

24

ORDER ON MOTIONS FOR SUMMARY JUDGMENT - 13

1  Auburn Chart is strikingly similar to the Managing and Aligning Charts and if that is sufficient to

2  show Plaintiffs are entitled to summary judgment.

3      D.  *Copyright Infringement*

4      A plaintiff who claims copyright infringement must show: (1) ownership of a valid

5  copyright; and (2) that the defendant copied protected aspects of the copyrighted work.

6  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1116-17 (9th Cir. 2018), *overruled on other grounds*

7  *by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Zeppelin*, 952 F.3d 1051 (9th Cir. 2020); *Ellison*

8  *v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). The second element contains distinct

9  components: "copying" and "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117.

10     At this time, the parties do not dispute that there is a question of fact regarding whether

11  Plaintiffs registered the Managing Chart or elements of the Managing Chart and, if so, have

12  shown ownership of a valid copyright. *See* Dkts. 130, 139, 140. Further, for purposes of these

13  Motions, the parties do not dispute that Plaintiffs have ownership of a valid copyright for the

14  Aligning Chart. *See* Dkts. 139, 140. The issue before the Court, therefore, is the second element

15  of a copyright infringement claim -- whether Defendants copied protected aspects of Plaintiffs'

16  work.

17          i.   Copying

18     "Because independent creation is a complete defense to copyright infringement, a

19  plaintiff must prove that a defendant copied the work." *Skidmore*, 952 F.3d at 1064. A plaintiff

20  may establish copying through direct or circumstantial evidence. However, "direct evidence of

21  copying is rarely available." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

22     Absent direct evidence of copying, a plaintiff can attempt to prove copying

23  "circumstantially by showing that the defendant had access to the plaintiff's work and that the

24

two works share similarities probative of copying." *Rentmeester*, 883 F.3d at 1117.

"Circumstantial evidence of reasonable access is proven in one of two ways: (1) a particular chain of events is established between the plaintiff's work and the defendant's access to that work (such as through dealings with a publisher or record company), or (2) the plaintiff's work has been widely disseminated." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000), *overruled on other grounds by Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020). "To prove access, a plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Entm't Inc.,* 581 F.3d 1138, 1143 (9th Cir. 2009).

Here, there is no evidence of direct copying. Thus, the Court must determine if there is a genuine issue of material fact regarding whether (1) a particular chain of events has been established between the Aligning Chart and Defendants' access to the Aligning Chart or (2) whether the Aligning Chart has been widely disseminated.

*Prior Decision.* The Court notes that, at trial, the Court issued a supplemental jury instruction that instructed the jury that the Auburn Chart was not derived from the Aligning Chart. *See* Dkt. 130 at n.10. The Ninth Circuit upheld that jury instruction and stated "Lippitt produced no evidence at trial that the creators of this chart accessed the Aligning for Success chart either directly or through widespread dissemination." *Id*. The Court finds, consistent with its prior decision and the Ninth Circuit's decision, Plaintiffs have failed to provide new evidence showing the creators of Auburn Chart had access to the Aligning Chart either directly or through widespread dissemination.

*Chain of Events*. The Court finds there was no chain of events established between the Aligning Chart and Defendants' access to the Aligning Chart. The evidence shows McConnell

attended a presentation in November of 2013 where he saw the Auburn Chart. Dkt. 139-1 at 3. The Auburn Chart includes: "Adapted from "Knoster, T. (1991) Presentation at TASH Conference, Washington DC {Adapted by Knoster from Enterprise Group Ltd.}." Dkt. 139-2. Dr. Timothy Knoster included a managing complex change chart in his book. *See* Dkts. 139-3, 139-4. The chart in the Knoster book includes: "Adaptation of Ambrose's (1987) managing complex change model." Dkt. 139-3. Knoster testified that, at the time he created his chart, he understood Ambrose to be the originator of the chart he referenced. Dkt. 158-1 at 8. Further, Knoster testified he has never seen Lippitt's original works that include the chart of the type that Knoster attributed to Ambrose. Dkt. 139-4 at 6. In 2011, Lippitt contacted Knoster and claimed she was the original author of the chart attributed to Ambrose and, as a result, Knoster signed a letter stating that he agreed Lippitt was the author of the chart. *See id*.

The undisputed evidence shows the chart McConnell accessed was adapted from a 1987 chart attributed to Ambrose. While Plaintiffs seem to assert the Ambrose Chart is a copy of Lippitt's Managing Chart, the Court finds the evidence in the record, beyond Lippitt's self-serving statements, fails to support that assertion. Further, Plaintiffs' assertion would, at most, create a question of fact regarding whether Knoster had access to Plaintiffs' Managing Chart. Knoster's access (or lack thereof) to the Managing Chart does not create a question of fact regarding whether Knoster had access to Plaintiffs' Aligning Chart.

Regardless of whether Ambrose or Lippitt created the chart from which Knoster adapted his chart, there is no evidence Knoster had access to the Aligning Chart when he created his chart. Rather, the evidence shows the chain of events connects as follows:

Ambrose → Knoster → Auburn → McConnell

Important to this Court's decision, there is no evidence Knoster viewed or had access to Plaintiffs' Aligning Chart. In fact, the evidence fails to show an Aligning Chart had been created at the time Ambrose created the chart from which Knoster adapted his chart. Based on the undisputed evidence before the Court, neither Ambrose, Knoster, nor Auburn had access to and copied Plaintiffs' Aligning Chart. Therefore, no chain of events has been established between Plaintiffs' Aligning Chart and Defendants' access to the Aligning Chart.

*Widely Disseminated*. Second, the Court finds there is no evidence showing Defendants accessed the Aligning Chart through widespread dissemination. The evidence shows Lippitt never displayed the Aligning Chart on her website, never included it in any of her published articles, never showed it in any of her YouTube videos, and never included it in a book. Dkt. 139-5 at 6-8. She also has no records showing when or if she did presentations containing the Aligning Chart. *See id.* at 11. Importantly, there is no evidence showing Lippitt had disseminated or conducted presentations containing the Aligning Chart prior to 2013, the year McConnell created Defendants' Chart. While Lippitt has used the chart(s) as part of presentation materials and she sells the chart(s) as part of materials available on her website, she has never made the Aligning Chart "public" or "freely available for others to copy." Dkt. 142, Lippitt Dec., ¶ 13.

Lippitt testified that, approximately twice a year for the past ten years, she has conducted Google searches to see if she can find infringing copies of her charts online. Dkt. 146, Lippitt Dec., 8. She states both her Managing Chart and Aligning Chart have shown up in the Google results. *Id*. Lippitt also stated that, in 2016, she engaged a company to search for uses of her charts online. *Id.* ¶ 9. Lippitt testified the company found unauthorized uses of her Managing Chart and Aligning Chart online. *Id*.

McConnell testified that he did an internet search for Knoster, TASH conference, 1991. Dkt. 139-1, 4. While unclear, the record reflects McConnell's internet searches would have been completed prior to March of 2016.[5] McConnell stated, during the internet searches, he saw dozens and dozens of other similar-looking charts that were attributed to Knoster, TASH conference, 1991. *Id*. McConnell testified there was a wide range of charts that "came up as a result of searching for 'Knoster, 1991 TASH conference'." *Id*.

The evidence fails to show widespread dissemination. There is no evidence of sales numbers or the number of times the Aligning Chart was used in presentations prior to Defendants' Chart being created.[6] While Lippitt testified that her Aligning Chart has shown up in online searches, she provides no information regarding the searches. For example, there is no evidence regarding the search terms used, the search engines used, how frequently the Aligning Chart appeared, and if the Aligning Chart appeared multiple times over the years. Thus, there is no evidence Lippitt's Aligning Chart was widely disseminated through the internet at the time McConnell conducted his searches and created Defendants' Chart. *See Lois v. Levin*, 2022 WL 4351968, at *3 (C.D. Cal. Sept. 16, 2022) (stating that "courts within this Circuit and our sister Circuits have consistently held that the mere availability of a work online is insufficient to establish widespread dissemination and finding mere availability of the plaintiff's song on multiple online streaming platforms insufficient to demonstrate access).

---

[5] While McConnell did not specify the date of his search, the record reflects that it was sometime after November 2013 and before March of 2016. McConnell testified that he saw the Auburn Chart at a presentation in November of 2013. Dkt. 139-1 at 3. McConnell states that, during the process of creating the Defendants' Chart, he did the internet search. *Id*. at 4. The record further indicates Defendants were using Defendants' Chart in a YouTube video in March of 2016. *See* Dkt. 1 at 10. Therefore, the record reflects McConnell's internet searches were completed prior to March of 2016.

[6] Plaintiffs provided receipts showing Plaintiffs sold 41 copies of Lippitt's Leading Complex Change article in February of 2020. Dkt. 151. The Court finds this is not relevant to the Court's determination. Defendants' Chart was created years before these sales receipts; the sales receipts fail to show the content of the Leading Complex Change article; and the sale of 41 copies of an article fails to show widespread dissemination.

The Court notes Plaintiffs submitted excerpts of a Google.com search from November 22, 2020 to support Plaintiffs' position that the Aligning Chart was widely disseminated. *See* Dkt. 160 at 6 – 11. Regardless of the fact that the Google.com search is not adequately authenticated, the Court finds the Google.com search fails to show widespread dissemination. First, the Google.com searches from November 22, 2020 have no relevancy on whether there was widespread dissemination of the Aligning Chart or Managing Chart prior to 2016, the year McConnell published Defendants' Chart. Second, the Google.com searches are very specific to "mary lippitt" "change" and "enterprise management." Third, even with the narrowly tailored search terms, a review of the images provided by Plaintiffs' counsel show versions of the Aligning Chart appeared only three times in all the Google.com searches provided to the Court. *Id*. The Court finds these Google.com searches are not relevant to the issue of widespread dissemination. However, even considering these Google.com searches, it does not show the Aligning Chart has been widely disseminated. *See Art Attacks Ink, LLC*, 581 F.3d at 1145 (recognizing the power of the internet to reach a wide and diverse audience, but finding it was insufficient to demonstrate wide dissemination in this case); *Lois*, 2022 WL 4351968 at *3.[7]

Based on the record before the Court, there is insufficient evidence to create a genuine issue of material fact to show Defendants had access to the Aligning Chart through widespread dissemination.

*1991 Chart*. Plaintiffs contend that Lippitt recently discovered evidence showing that the Auburn Chart could have been a derivative of the Aligning Chart. Dkt. 145 at 12. The Auburn

---

[7] Plaintiffs contend Plaintiffs and Defendants are operating within a "niche industry" and, therefore, a jury could conclude McConnell had an opportunity to view and copy the Aligning Chart without widespread dissemination. Dkt. 145 at 11-12. The Court finds Plaintiffs have provided only conjecture that the parties are operating within a niche industry. For example, there is no evidence the parties were operating in the same geographic region or within such a small industry as to show Plaintiffs' limited evidence of dissemination would be sufficient to show access in this case. As such, the Court is not persuaded by Plaintiffs' "niche industry" argument.

Chart includes a statement it was adapted from Knoster (1991). Dkt. 139-2. Plaintiffs assert

Lippitt recently found a copy of her Aligning Chart that is dated "1991." *See* Dkt. 146, Lippitt

Dec., ¶ 3. Plaintiffs state that Knoster's 1991 chart could have been an adaptation of Lippitt's

1991 Aligning Chart. Dkt. 145 at 13. Plaintiffs provide no evidence to support this argument. At

most, Lippitt states she does not have records going back to 1991 and it is her belief that she

delivered the 1991 presentation many times. Dkt. 158-2 at 12. Lippitt does not provide any dates

or information to support her assertions. *See* Dkt. 158-2. She stated that she delivered the

program to Montgomery County public schools, but she could not recall the date of the

presentation or what materials were used during the presentation. *Id*. at 17-19. She also stated

that she never gave the 1991 chart to Knoster or the Auburn School District. *Id*. at 26-26. Dr.

Myriam Met provided a letter that stated Dr. Lippitt presented her materials to the Montgomery

County Public Schools in 1987 or 1988 –three to four years before the 1991 Chart was created.

Dkt. 158-3.

       Plaintiffs' argument regarding the 1991 chart is merely conjecture. There is no evidence

Knoster or Auburn had direct access to the 1991 Chart or access through a chain of events.

Further, there is no evidence the 1991 chart was disseminated at all and there is certainly no

evidence the 1991 chart was widely disseminated. Moreover, the evidence shows Knoster based

his chart on a 1987 chart and Auburn based its chart on Knoster's chart. There is no evidence

there was an Aligning Chart in existence in 1987 and there is no evidence to refute Knoster's

testimony that he based his chart on a 1987 chart. Based on the record, a reasonable jury could

not conclude there was more than a "bare possibility" that Knoster had access to the 1991 Chart.

*See Art Attacks*, 581 F.3d at 1145. Therefore, the Court is not persuaded by this argument.

1    ii. Striking Similarity

2   "Absent evidence of access, a 'striking similarity' between the works may give rise to a

3 permissible inference of copying." *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir. 1987).

4 "Striking similarity, like substantial similarity, is evaluated using the two-prong analysis of the

5 extrinsic test and the intrinsic test." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th

6 1054, 1084 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 2583 (2023). First, under the extrinsic test, an

7 objective comparison is made between the elements of each work. *Id.* Second, under the intrinsic

8 test, a subjective comparison is made, which determines whether the two works create a

9 subjective impression that the two works are substantially similar. *Id*. Generally, "once the

10 objective threshold is met, it is the role of the jury to make a nuanced subjective determination

11 under the intrinsic test." *Id*. at 987.

12   "The mere existence of multiple similarities is insufficient to meet the test." *Gal v.

13 Viacom Int'l, Inc.,* 518 F.Supp.2d 526, 543 (S.D.N.Y. 2007). "A plaintiff has not proved striking

14 similarity sufficient to sustain a finding of copying if the evidence as a whole does not preclude

15 any reasonable possibility of independent creation." *Stewart v. Wachowski,* 574 F.Supp.2d 1074,

16 1099 (C.D. Cal. 2005) (internal quotations omitted). Evidence of the manner in which a

17 defendant created its work is "logically relevant" to determining whether copying occurred.

18 *Granite Music Corp. v. United Artists Corp.,* 532 F.2d 718, 720 (9th Cir. 1976).

19   *Aligning Chart and Defendants' Chart.* Defendants seek a summary judgment finding in

20 favor of Defendants as to the Aligning Chart. Dkt. 139. Defendants contend the Aligning Chart is

21 not strikingly similar to Defendants' Chart. *Id*. Plaintiffs contend Defendants' Chart is strikingly

22 similar to the Aligning Chart. *See* Dkt. 140. In reviewing the Aligning Chart contained within the

23 226 and 350 copyright registrations at issue, the Court finds there are not sufficient similarities

24

between Defendants' Charts and the Aligning Chart to meet the high standard of "striking similarity."

The Aligning Chart and the Defendants' Chart contain columns and rows, creating a flow-chart to express complex change. The Defendants' Chart uses several words that are used in the Aligning Chart. The charts also show the corresponding result when each element necessary for change is removed. Furthermore, both Defendants' Chart and the Aligning Chart use plus signs and equal signs to connect the elements with the result.

However, there are significant differences between Defendants' Chart and the Aligning Chart. The Defendants' Chart has a dark background and uses green and yellow colored boxes to highlight the elements. In the Aligning Chart, the background appears to be gray-scaled and the elements are contained within transparent ovals. To show a missing element, the Aligning Chart omits the oval and inserts a jagged line. In contrast, to show an element had been removed from the change process, Defendants' Chart includes the missing element, which is inserted in a transparent box with white font coloring. Thus, in contrast to the Aligning Chart, Defendants' Chart does not contain a blank space or a line where the missing element would be located. Defendants' Chart contains an additional element ("consensus") and an additional result ("sabotage"). Defendants' Chart also uses different wording for one element ("skills" rather than "capabilities") and two results ("change" rather than "success" and "treadmill" rather than "false starts"). Defendants' Chart also has two elements ("resources" and "incentives") in an order different than the Aligning Chart. Finally, the charts do not possess the same name ("Lippitt/Knoster Change Model" compared to "Aligning for Success").

1   While Plaintiffs have provided a detailed list of their perceived similarities between the

2   Managing Chart, the Aligning Chart, the Auburn Chart, and Defendants' Chart, Dkt. 140, this

3   alone is insufficient to show striking similarities. As the Seventh Circuit has clearly articulated,

> No matter how great the similarity between the two works, it is not their similarity *per se* which establishes access; rather, their similarity tends to prove access in light of the nature of the works, the particular . . . genre involved and other circumstantial evidence of access. In other words, striking similarity is just one piece of circumstantial evidence tending to show access and must not be considered in isolation; it must be considered together with other types of circumstantial evidence relating to access.

8   *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984); *see also Stewart,* 574 F.Supp.2d at 1099-1100

9   (citing *Selle*, 741 F.2d at 901).

10   Defendants' undisputed evidence showing the manner in which Defendants' Chart was

11   created belies a finding of "striking similarity" as to the Aligning Chart. As detailed above,

12   McConnell attended a conference where he saw a chart (the Auburn Chart) that was attributed to

13   Knoster. Knoster testified that he adapted his chart from a 1987 chart created by Ambrose. There

14   is no evidence Knoster had access to the Aligning Chart or to the 1991 Chart. Further, the

15   evidence shows Knoster based his chart on a 1987 chart, which would have been created years

16   before any Aligning Chart was created.[8] Therefore, the undisputed evidence shows the following

17   chain of events: McConnell adapted Defendants' Chart from the Auburn Chart; the Auburn

18   Chart was attributed to Knoster's chart, and Knoster attributed his chart to a 1987 Ambrose

19   chart. While Plaintiffs assert Knoster adapted his chart from Lippitt's Managing Chart, there is

20   no evidence to support this assertion beyond a letter Lippitt drafted for Knoster to sign. Knoster

---

[8] Plaintiffs state Knoster could have viewed the 1991 Aligning Chart. The Court recognizes that there are more similarities between the 1991 Aligning Chart and the Knoster Chart. However, the only evidence Plaintiffs submit to show that Knoster *could have* viewed the 1991 Aligning Chart is based on conjecture. Thus, Plaintiffs' conjecture is insufficient to create an issue of material fact and the Court finds Plaintiffs' argument is not persuasive.

admits he has never seen any of Lippitt's works. Regardless, this evidence is again focused on the Managing Chart, not the Aligning Chart, which is the chart at issue here.

Regardless of similarities between the Aligning Chart and the Defendants' Chart, Plaintiffs' have not shown Defendants' Chart and the Aligning Chart meet the "strikingly similar" test because the undisputed evidence precludes a finding that the only explanation for the similarities between Defendants' Chart and the Aligning Chart is copying. *See Selle*, 741 F.2d at 901 (noting proof of similarity must be "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded" and stating that "two works may be identical in every detail, but, if the alleged infringer created the accused work independently or both works were copied from a common source in the public domain, then there is no infringement"). Therefore, the undisputed evidence shows that, despite similarities, there is no genuine issue of material fact regarding whether Defendants' Chart is strikingly similar to the Aligning Chart.

*Managing Chart and Auburn Chart*. Plaintiffs assert the Auburn Chart and the Managing Chart are strikingly similar. Because McConnell based Defendants' Chart on the Auburn Chart and the Auburn Chart is strikingly similar to the Managing Chart, Plaintiffs' argue they have proved copying through striking similarity. The Court disagrees.

In reviewing the record as a whole, there is evidence showing the Auburn Chart was adapted from Knoster's chart, which was adapted from Ambrose. While Lippitt testified that she created the chart and that she is not aware of anyone creating the chart or claiming to have created a chart or similar illustration when she created her chart, the record reflects Knoster based his adaptation on Ambrose's work. The record reflects that Knoster believed Ambrose was the originator of the chart at the time he created the Knoster Chart. Further, in 2011, Knoster

signed a letter stating Lippitt was the originator of the chart based purely on Lippitt's demand that Knoster cease using her chart. Knoster never saw Lippitt's works, including the Aligning Chart and Managing Chart. At this point, the only evidence showing Lippitt created the Managing Chart are Lippitt's own self-serving statements. The Court finds the evidence is sufficient to show that there is a potential explanation for the similarities between the Auburn Chart and the Managing Chart beyond Auburn copying Plaintiffs' Managing Chart. *See Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 988 (9th Cir. 2017) ("striking similarity can allow a reasonable inference of access when 'the similarity is of a type which will preclude any explanation other than that of copying.'" (quoting *Selle*, 741 F.2d at 905)). Therefore, there is a genuine issue of material fact regarding whether the Auburn Chart is strikingly similar to the Managing Chart.

Plaintiffs also appear to argue the Managing Chart and Defendants' Chart are strikingly similar and, thus, prove copying. Dkt. 140. Plaintiffs, however, concede the Managing Chart and Defendants' Chart have less similarities than the Managing Chart and the Auburn Chart. *See* Dkt. *id*. at 10. Specifically, Plaintiffs argue the "Managing chart shares at least nineteen objective similarities with the Auburn Chart, and of these, seventeen are also shared with [Defendants'] charts." *Id*. Importantly, as detailed above, the Court finds the evidence does not preclude any explanation other than copying between the Auburn Chart and the Managing Chart. As Defendants' Chart was adapted from the Auburn Chart, the evidence also does not preclude any explanation other than copying between Defendants' Chart and the Managing Chart. As such, the Court also finds there is a genuine issue of material fact regarding whether Defendants' Chart is strikingly similar to the Managing Chart.

1    As the Court finds there is a genuine issue of material regarding striking similarity

2 between the Managing Chart and the Auburn Chart and between the Managing Chart and

3 Defendants' Chart, a summary judgment finding that Defendants copied the Managing Chart is

4 not warranted.

5    *Aligning Chart and Auburn Chart*. Plaintiffs also assert the Court should find the Auburn

6 Chart is strikingly similar to the Aligning Chart and, thus, should grant summary judgment in

7 Plaintiffs' favor finding copyright infringement as to the Aligning Chart. Dkt. 140. The Court

8 finds that the Aligning Chart is not strikingly similar to the Auburn Chart. The striking similarity

9 rule only applies "where the works are so unmistakably similar that, 'as a matter of logic, the

10 only explanation for the similarities between the two works must be copying rather than ...

11 coincidence, independent creation, or prior common source.'" *Bernal v. Paradigm Talent &*

12 *Literary Agency*, 788 F. Supp. 2d 1043, 1052 (C.D. Cal. 2010) (quoting 4–13 Nimmer on

13 Copyright § 13.02[B] (2009) (cleaned up). Based on the differences of the charts, including

14 items such as the title and the design, the similarities between the Managing Chart and the

15 Auburn Chart, and evidence showing a different explanation for the similarities rather than

16 copying the Aligning Chart, the Court finds Plaintiffs have not shown the Auburn Chart is

17 strikingly similar to the Aligning Chart. Moreover, the Court has determined Defendants are

18 entitled to summary judgment on Plaintiffs' copyright infringement claim as to the Aligning

19 Chart. Therefore, Plaintiffs request for a summary judgment finding on their claim of copyright

20 infringement as to the Aligning Chart is not warranted.

21    iii.    Conclusion

22    The evidence shows Defendants did not have access to the Aligning Chart. Further, the

23 evidence shows Defendants' Chart is not strikingly similar to the Aligning Chart. Therefore, the

24

Court finds summary judgment in favor of Defendants, and against Plaintiffs, is appropriate with regard to Plaintiffs' claim of copyright infringement as to the Aligning Chart.

There is a question of fact regarding whether Lippitt has ownership of a valid copyright of the Managing Chart and/or whether protectible elements of the Managing Chart were included in the 226 or 350 registration. Additionally, as there are genuine issues of material fact regarding whether Defendants copied the Managing Chart or a derivative of the Managing Chart, Plaintiffs have not shown a summary judgment finding Defendants copied the Managing Chart is appropriate.

E.  *Damages*

Defendants requests a judgment that, at most, a single statutory damage award is available for any proven infringement. Dkt. 139. The Copyright Act permits a copyright owner to elect an award of statutory damages in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1) ("Section 504(c)(1)"). Section 504(c)(1) permits an owner to recover "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." *Id.* Section 504(c)(1) limits statutory damages awards to $150,000 for willful infringement and $30,000 for innocent infringement. *Id*. § 504(c)(1), (2). "The number of awards available under this provision depends not on the number of separate infringements, but rather on (1) the number of individual 'works' infringed and (2) the number of separate infringers." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189–90 (9th Cir. 2016).

Defendants argue there is only one "work" at issue because the Aligning Chart is a derivative of the Managing Chart. Dkt. 139. Plaintiffs assert it is a question of fact for the jury

regarding whether each chart is an independent work or constitutes one work. Dkt. 145. Plaintiffs do not argue Defendants should be found to be separate infringers. *Id*.

Based on the above findings that Defendants are not liable for copyright infringement of the Aligning Chart, the Court finds there is only one work, the Managing Chart, at issue. Further, Plaintiffs do not contest, and the Court does not find, McConnell and Construx are separate infringers. Rather, McConnell and Construx are jointly and severally liable. Therefore, there is only one work and one infringer. Accordingly, Defendants' Motion for Summary Judgment is granted as to damages and Plaintiffs are allowed (at most) only statutory damages award. *See Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1264–65 (9th Cir.), *cert. denied*, 142 S. Ct. 343, 211 L. Ed. 2d 183 (2021) (holding that only one statutory award was available when "one infringer is jointly and severally liable with all other infringers, but the other infringers are not completely jointly and severally liable with one another").

## IV.   Conclusion

The evidence shows Defendants did not have access to the Aligning Chart. Further, Defendants' Chart is not strikingly similar to the Aligning Chart. Therefore, the Court finds summary judgment in favor of Defendants, and against Plaintiffs, is appropriate with regard to Plaintiffs' claim of copyright infringement as to the Aligning Chart. There is, however, a genuine issue of material fact regarding whether Plaintiffs have ownership of a valid copyright regarding the Managing Chart. Additionally, as there are genuine issues of material fact regarding whether Defendants copied the Managing Chart or a derivative of the Managing Chart, Plaintiffs have not shown a summary judgment finding Defendants copied the Managing Chart is appropriate. Finally, the Court finds only one statutory award is permissible, in the event infringement can be proven.

1    For these reasons, Defendants' Partial Motion for Summary Judgment (Dkt. 139) is

2    granted and Plaintiffs' Motion for Summary Judgment (Dkt. 140) is denied.

3    Dated this 1st day of March, 2024.

David W. Christel
United States Magistrate Judge