1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ENTERPRISE MANAGEMENT LIMITED, INC., MARY LIPPITT, <br><br> Plaintiff, <br><br>     v. <br><br> CONSTRUX SOFTWARE BUILDERS, INC, STEVE C. MCCONNELL, <br><br> Defendant. | CASE NO. 2:19-CV-1458-DWC <br><br> ORDER ON MOTIONS FOR ATTORNEY FEES AND COSTS |

Currently pending before the Court is Defendants Construx Software Builders, Inc. and Steve C. McConnell's Motion for Attorneys' Fees and Motion for Bill of Costs and Plaintiffs Enterprise Management Limited, Inc. and Mary Lippitt's Motion for Attorneys' Fees and Motion for Bill of Costs. Dkts. 197, 199, 202, 204.[1] After considering the relevant record, the parties' Motions for Attorney Fees (Dkts. 197, 202) and Plaintiffs' Motion for Bill of Costs (Dkt. 204) are denied. Defendants' Motion for Bill of Costs (Dkt. 199) is granted-in-part as follows: Defendants are awarded post-offer costs in the amount of $3,993.03.

---

[1] Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 11, 12.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

I.      **Background**

The following procedural history is relevant to determining if a fee award is warranted in this case:

Plaintiffs initiated this lawsuit on September 11, 2019. Dkt. 1. In the First Amended Complaint ("Complaint"), Plaintiffs alleged Defendants unlawfully copied and distributed Plaintiff Lippitt's works or derivations based on her works, which are owned by Plaintiff Enterprise, without permission. Dkt. 29.[2] Plaintiffs also alleged Defendants used Plaintiff Lippitt's name to benefit their business without Plaintiff Lippitt's permission in violation of Washington State's Consumer Protection Act ("CPA") and Personality Rights Act. *Id.*

Defendants filed a motion to dismiss on December 26, 2019. Dkt. 31.[3] The motion to dismiss was granted-in-part and denied-in-part. Dkt. 37. The Court found Plaintiffs stated a copyright infringement claim against Defendants regarding one of Defendants' works – the Managing Complex Change chart. *Id.* However, the Court dismissed Plaintiffs' copyright infringement claim regarding Defendants' Domino Change Model, the Washington State CPA claims, and any claims under the Washington State Personality Rights Act. *Id.*

Defendants next filed a motion for summary judgment, which was granted-in-part and denied-in-part. Dkt. 46, 51. The Court found no genuine issue of fact remained regarding copyright infringement claims arising from Plaintiffs' Managing Complex Change chart as there was no valid copyright registration. Dkt. 51. The Court allowed one copyright infringement

---

[2]Plaintiffs alleged their first chart, Managing Complex Change, is protected under U.S. Copyright Registration No. TX 2-124-202. *See* Dkt. 29, ¶ 22. Plaintiffs alleged their second chart, Aligning for Success, is protected under U.S. Copyright Registration Nos. TXu 956-226 and TX 50827-350. *See id.* at ¶ 23.

[3] Defendants initially filed a motion to dismiss in October 2019. Dkt. 15. After Defendants filed the first motion to dismiss, Plaintiffs sought leave to file an amended complaint. *See* Dkt. 18. Plaintiffs' motion to amend was granted and the first motion to dismiss was denied without prejudice. Dkt. 27.

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 2

claim to remain related to Plaintiffs' Aligning for Success chart. *Id*. Thus, after the Court's rulings on the motion to dismiss and the motion for summary judgment, the only claim remaining in the case was whether Defendants were liable for copyright infringement of Plaintiffs' Aligning for Success chart. *See* Dkt. 37, 51. The case proceeded to trial and, on March 25, 2022, the jury rendered a defense verdict finding Defendants did not infringe the copyrighted work of registration number TXu-956-226 or TX-5-827-350, wherein the Aligning for Success chart was registered. Dkt. 98.

After the jury rendered a defense verdict, Plaintiffs appealed. Dkts. 101, 110. The Ninth Circuit reversed the grant of summary judgment and vacated the jury verdict because Plaintiffs had created a genuine issue of material fact regarding whether Lippitt registered the Managing Complex Change chart and, as a matter of first impression, Plaintiffs could attempt to show copyright infringement if the elements of the original work were included in the registration of a derivative work. Dkt. 130.

On remand, the parties filed motions for summary judgment. Dkts. 139, 140. After consideration of the motions for summary judgment, the Court granted Defendants' partial motion for summary judgment and the only remaining claim was whether Defendants were liable for copyright infringement of Plaintiffs' Managing Complex Change chart. *See* Dkt. 163. This case proceeded to trial and, on June 12, 2024, the jury determined Plaintiffs did not prove the Managing Complex Change chart was registered via the TX 2-124-202 registration. However, the jury determined Defendants infringed on the portions of the Managing Complex Change chart proven to have been effectively registered in the TXu-956-226 or the TX-5-827-350 registrations. *See* Dkt. 196. The jury awarded Plaintiffs damages in the amount of $8,000.00. *Id*.; *see also* Dkt. 193.

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 3

The parties have now filed the pending Motions for Attorneys' Fees and Motions for Bill of Costs. The Motions have been fully briefed. Dkts. 197-98, 199-200, 202-03, 204-209,  212-15, 219.

## II.    Request to Strike

Defendants have filed a surreply requesting the Court strike the declaration of Benjamin Hodges submitted with Plaintiffs' Reply in Support of Plaintiffs' Motion for Attorneys' Fees. *See* Dkts. 216, 217. Defendants contend Plaintiffs asserted new evidence or argument for the first time in the reply. Dkts. 217.

"It is well established that new arguments and evidence presented for the first time in [a] Reply are waived." *Docusign, Inc. v. Sertifi, Inc*., 468 F.Supp.2d 1305, 1307 (W.D. Wash. 2006) (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)). While the court may refuse to consider evidence submitted for the first time in a reply, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), the Court may consider evidence and argument submitted with a reply that is responsive to arguments raised in the non-moving party's brief in opposition. *See PSM Holding Corp. v. Nat'l Farm Fin. Corp*., 2013 WL 12080306, at *4 (C.D. Cal. Oct. 8, 2013), *aff'd in part*, 884 F.3d 812 (9th Cir. 2018). "[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond." *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) (quoting *Black v. TIC Inv. Corp*., 900 F.2d 112, 116 (7th Cir. 1990)).

The Court has reviewed the relevant documents and finds Plaintiffs' arguments and citations to new evidence it their reply are relevant to the arguments raised in Plaintiffs'  Motion for Attorneys' Fee (Dkt. 202)  and should have been submitted at that time. The Court declines to consider any new evidence raised Mr. Hodges' declaration.

III.    **Fee Award under Copyright Act**

Section 505 of the Copyright Act provides that the Court may "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 (1994).

A.  *Prevailing Party*

Both parties assert that they are a prevailing party in this case. Dkts. 197, 202. "Prevailing party" is defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001). "Prevailing party" in varying fee-shifting statutes are interpreted consistently. *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 422 (2016) ("Congress has included the term 'prevailing party' in various fee-shifting statutes, and it has been the Court's approach to interpret the term in a consistent manner"). The Court recognizes that, often, the party for whom final judgment is entered is the "prevailing party." *See Buckhannon*, 453 U.S. at 603 (citing Black's Law Dictionary defining prevailing party as a party in whose favor judgment is rendered). In this case, the judgment was rendered in favor of Plaintiffs. Therefore, the Court finds Plaintiffs are the prevailing party. The Court declines to find Defendants are the prevailing party; therefore, Defendants' Motion (Dkt. 197) is denied.

B.  *Entitlement to Attorney's Fees*

As the Court has determined Plaintiffs are the prevailing party, the Court must now assess whether Plaintiffs are entitled to a fee award. "There is no precise rule or formula" for determining whether a prevailing party in a particular case is entitled to a fee award. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37

1    (1983)). Rather, "equitable discretion should be exercised" by the Court. *Id.* However, the

2    Supreme Court established two restrictions: (1) "a district court may not 'award[ ] attorney's fees

3    as a matter of course'; rather a court must make a more particularized, case-by-case assessment;"

4    and (2), "a court may not treat prevailing plaintiffs and prevailing defendants any differently[.]"

5    *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (citing *Fogerty*, 510 U.S. at 527,

6    533–34)). "[A] successful defense of a copyright infringement action may further the policies of

7    the Copyright Act every bit as much as a successful prosecution of an infringement claim by the

8    holder of a copyright." *Fogerty*, 510 U.S. at 527.

9           To guide the Court in determining if a fee should be awarded, the Court considers several

10   nonexclusive factors, including (1) the degree of success obtained, (2) whether the claims were

11   frivolous, motivated by bad faith, and/or objectively unreasonable, (3) the need for compensation

12   and deterrence, and (4) whether the chilling effect of a fee award may be too great or impose an

13   inequitable burden on an impecunious plaintiff. *See Love v. Associated Newspapers, Ltd.*, 611

14   F.3d 601 -614-15 (9th Cir. 2010); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir.

15   2017). "These factors are not exclusive, and not all need to be considered or met." *Coble v.*

16   *Renfroe*, 2012 WL 1077843, at *1 (W.D. Wash. March 30, 2012) (citing *Fogerty*, 510 U.S. at

17   558).

18               i.    Success in this action

19          First, Plaintiffs assert they were successful in this case because they are the prevailing

20   party. Dkt. 202. Plaintiffs, however, had limited success in this case. Plaintiffs filed this action

21   alleging Defendants infringed on three different copyrights, violated the consumer protection act,

22   and violated personality rights under R.C.W. § 63.60.010. Dkt. 29. After a motion to dismiss was

23   granted-in-part, only one copyright claim remained. In litigating the copyright claim, Plaintiffs

24

were unsuccessful at proving access and copying of the Aligning for Success chart at both the

first jury trial and in a subsequent summary judgment motion after remand. Further, at the

second trial, Plaintiff was unable to prove that she had a copyright registration for the Managing

Complex Change chart; rather, the jury found elements of the Managing Complex Change chart

had been registered by her later copyright registrations. Finally, the jury awarded $8,000.00,

finding Defendants' conduct was not willful and awarding damages in the lower range of the

allowed damages.

Plaintiffs sought recovery for multiple alleged claims but were only able to prove that

portions of one chart, registered through a derivative chart, were copied by Defendants.

Therefore, the Court finds Plaintiffs' success in this case does not weigh in favor of awarding

fees. *See Greg Young Publ'g, Inc. v. Zazzle, Inc.*, 785 F. App'x 417, 419 (9th Cir. 2019) (finding

the district court did not abuse its discretion when it did not award the plaintiff attorney fees

when the plaintiff established liability but only recovered a portion of damages at trial and the

defendant had success on other works at the summary judgment stage).

ii.  Objectively Unreasonable

Second, Plaintiffs assert Defendants were objectively unreasonable in refusing to make

settlement offers for the first two years of this dispute. In exercising its authority to award a

reasonably attorney's fee, the Court should give substantial weigh to the objective

reasonableness of the losing party's position. *Kirtsaeng*, 579 U.S. at 200. Defendants' settlement

offers or lack thereof do not appear to have extended this case or to have been objectively

unreasonable. The parties were unable to reach a settlement at the initial stages of the case. The

record indicates that within one month of initiating this case, Plaintiffs were unwilling to settle

this case unless Defendants changed their position regarding damages and removing

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 7

1   McConnell's book from publication. *See* Dkt. 209-10 at 2-3. McConnell's book included the

2   Domino Change Model (Dkt. 208 at 2) and Defendants successfully defended the copyright

3   claim related to the Domino Change Model in the motion to dismiss. As such, Defendants

4   "refusal" to change their position on the book was not unreasonable.

5        After Defendants filed a motion to dismiss, Plaintiffs increased their settlement demand

6   from $70,000 to $183,000. *See* Dkt. 203. Then, after several claims were dismissed by the Court

7   including the Domino Change Model, Plaintiffs' settlement demand increased to $225,000. Dkt.

8   203 at 21. The parties attempted a mediation, which was unsuccessful. Dkt. 57.

9        After dispositive motions and a trial, the jury returned a defense verdict in March of

10  2022, approximately 2.5 years after the initiation of this case. *See* Dkts. 98, 101. Defendants'

11  decision to not make settlement offers during the first two years of this case, as alleged by

12  Plaintiffs, is not objectively unreasonable in light of the success of the motion to dismiss related

13  to the Domino Change Model, an initial defense verdict, and Plaintiffs' unreasonable settlement

14  offers.[4]

15       When the Ninth Circuit reversed and remanded the case, Defendants quickly made offers

16  of judgment. Dkts. 201-1, 201-2. Then, on a motion for summary judgment, Defendants were

17  able to show there was no question of material fact regarding whether Defendants had access to

18  the Aligning for Success chart. Dkt. 163. The Court notes that, throughout this case, Plaintiffs

19  presented additional, "new" evidence that should have been discovered and presented earlier. For

20  example, after the case was remanded from the Ninth Circuit, Lippitt "discovered" additional

21  evidence. *See* Dkt. 150 at 4. However, this "new" evidence had been in Lippitt's possession

22

23       [4] The Court recognizes that Plaintiffs can make settlement demands as they deem appropriate. However,
     increasing the settlement demand after a motion to dismiss has been filed and after the Court dismissed several

24  claims does not show a good faith effort to settle this case.

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 8

1    before she initiated this case and the "new" evidence required Defendants to conduct additional

2    discovery, including another deposition of Lippitt. *See* Dkt. 154. Plaintiffs' failure to search for

3    and disclose all evidence during the discovery period resulted in increased costs and fees.

4    Defendants, in the face of shifting case theories and "new" evidence, continued to diligently

5    litigate the case and narrow the issues for trial.

6          At the second trial, Defendants' position that Plaintiffs did not have a valid copyright

7    registration for the only remaining chart was successful; the jury found Plaintiffs did not have a

8    valid copyright registration for the Managing Complex Change chart. *See* Dkt. 193. It was also

9    reasonable for Defendants to argue the elements of the Managing Complex Change chart that

10   were included in the subsequent registrations were not sufficient to show Defendants infringed

11   on the copyright. The jury determined that there was an infringement, but it was not willful. Dkt.

12   193.

13         Plaintiffs allege that Defendants' "fair use" defense was objectively unreasonable. Dkt.

14   202. However, the "fair use" defense was presented to the jury. *See* Dkt. 193. While the jury did

15   not find Defendants proved any of their use was a fair use, the fact that it was presented to the

16   jury is sufficient to show the position was objectively reasonable. *See VMG Salsoul, LLC v.*

17   *Ciccone,* 824 F.3d 871, 887 (9th Cir. 2016) (finding that if a party's claim "hinges on disputed

18   facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide

19   the case in [that party's] favor").

20         Overall, the record reflects Defendants' litigation of this case was not objectively

21   unreasonable.

22

23

24

1                 iii.      Motivation/Bad Faith

2         Plaintiffs also argue Defendants had improper motivation to delay this case and require

3 the parties to incur increased fees and costs. Dkt. 202. First, Plaintiffs state that Defendants had

4 improper motives because Defendants refused to make a settlement offer for the first two years

5 of this case. As the Court has found Defendants' decisions regarding settlement offers was not

6 objectively unreasonable, the Court finds the same reasoning shows Defendants' decisions

7 regarding settlement offers was not done in bad faith or with improper motivation. *See* Sec. III,

8 B., ii, *supra*.

9         Plaintiffs next argue there was improper motivation because defense counsel, Larry

10 Graham, is Defendant McConnell's brother-in-law and, because defense counsel was being paid

11 by Defendants' insurance policy, Defendants were motivated to increase defense costs as they

12 would be funded by insurance or Plaintiffs. Dkt. 202 at 7-8. Plaintiffs' arguments about the

13 relationship between McConnell and Mr. Graham and continued references to the fact

14 Defendants' litigation expenses are covered by an insurance contract are not well-taken. Beyond

15 bald assertions of their relationship, Plaintiffs have provided no evidence McConnell selected

16 Mr. Graham to represent Defendants. For example, it is entirely possible the insurance company

17 had full control over the law firm and attorney that would represent their interests in this matter.

18 Regardless, neither the relationship between McConnell and Mr. Graham nor the source of

19 payments is of any import to this Court's decision. Plaintiffs have provided no evidence that Mr.

20 Graham's relationship with McConnell impacted this case. The record and Mr. Graham's

21 experience show he was well-qualified to represent Defendants in this matter. This factor weighs

22 against awarding attorney fees.

23

24

iv.  Need for deterrence and compensation

When evaluating a motion for fees under § 505, courts may consider whether there is a "need ... to advance considerations of compensation and deterrence." *Kirtsaeng*, 579 U.S. at 202 (quoting *Fogerty*, 510 U.S. at 534). "Deterring non-meritorious lawsuits against defendants seen as having 'deep pockets' and compensating parties that must defend themselves against meritless claims are both [laudable] ends." *Scott v. Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010). This factor supports an award of fees if the losing party should be deterred from presenting in the future the claims (or defenses) that it asserted in the case in which fees are sought. *Epikhin v. Game Insight North America*, 2016 WL 1258690, *8 (N.D. Cal. Mar. 31, 2016). The deterrence factor overlaps with those concerning motivation, frivolousness, and objective unreasonableness. *King v. IM Global*, 2017 WL 2620695, at *3 (C.D. Cal. Jan. 25, 2017); *Design Data Corp. v. Unigate Enter., Inc.*, 2014 WL 5513541, at *2 (N.D. Cal. Oct. 31, 2014) ("There is value in deterring frivolous lawsuits ...."). While a district court *may* award fees where recovery is small, *Wall Data Inc. v. L.A. County Sheriff's Dep't,* 447 F.3d 769, 787 (9th Cir. 2006), a district court does not abuse its discretion by not awarding them in such circumstances.

Here, Defendants' positions were not objectively unreasonable and the Court does not conclude that Defendants should have been deterred from pursuing their defenses. As discussed above, Defendants successfully defended several claims prior to trial and, at trial, Defendants were successful in arguing Plaintiffs did not have a valid copyright registration for the Managing Complex Change chart. Moreover, the only issue that was successful at trial was based on a matter of first impression – whether elements of Plaintiffs' chart could be registered in a copyright registration of a derivative work.

1    The Court recognizes the award amount is low and that it would be difficult to litigate a

2    copyright case for $8,000.00. However, the record reflects Plaintiffs filed meritless claims,

3    knowingly pursued baseless claims, and sought settlement amounts that exceeded the value of

4    this case. As discussed above, Plaintiffs stated they would not settle this case unless McConnell

5    removed his book from publication; however, the claim related to McConnell's book failed as a

6    matter of law. Then, after claims were dismissed, Plaintiffs continued to increase their settlement

7    demands. In fact, by March 2021, Plaintiffs asserted Defendants' total liability exceeded $4

8    million and offered to settle the case for $775,000. *See* Dkt. 209-15. The maximum statutory

9    amount that could be awarded was $150,000.00 and, even after two trials and an appeal,

10   Plaintiffs incurred approximately $1 million in total costs and fees. Valuing this case at over $4

11   million before the first trial occurred is a concern to the Court. Moreover, evidence shows

12   Plaintiffs have a history of engaging in litigation over the specific charts at issue in this case and,

13   during the litigation process, increasing settlement demands and over-valuing the charts. *See*

14   Dkts. 209-1 – 209-7. Further, Plaintiffs were aware Defendants had an insurance policy covering

15   the costs and, thus, had "deep pockets." *See* Dkt. 106, Hodges Dec., ¶ 5 (aware Defendants had

16   an insurance carrier no later than March of 2021); Dkt. 209-15 (letter referencing the value of the

17   case exceeding $4 million and making settlement offer of $775,000 states that Lippitt was

18   willing to schedule mediation if the insurance carrier would be present).

19          Defendants' litigation position was objectively reasonable and should not be deterred by

20   awarding fees to Plaintiffs. However, Plaintiffs' unreasonable settlement demands and attempts

21   to litigate non-meritorious claims in this Court and in other courts warrants declining a fee award

22   as a deterrence. For these reasons, this factor weighs against a fee award.

23

24

1          v.   Serves the purposes of the Copyright Act

2          The Court must assess if whether awarding fees in this case would further the purposes of

3    the Copyright Act. *See Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1040 (9th Cir.

4    2018). The Copyright Act's "primary objective" is to "encourage the production of original

5    literary, artistic, and musical expression for the good of the public." *Fogerty,* 510 U.S. at 524.

6              As *Fogerty* explained, "copyright law ultimately serves the purpose of enriching
7         the general public through access to creative works." 510 U.S., at 527, 114 S.Ct.
          1023; *see* U.S. Const., Art. I, § 8, cl. 8 ("To promote the Progress of Science and
8         useful Arts"). The statute achieves that end by striking a balance between two
          subsidiary aims: encouraging and rewarding authors' creations while also enabling
9         others to build on that work. *See Fogerty*, 510 U.S., at 526, 114 S.Ct. 1023.
          Accordingly, fee awards under § 505 should encourage the types of lawsuits that
10        promote those purposes.

11   *Kirtsaeng*, 579 U.S. at 204. A successful defense furthers the purposes of the Copyright Act just

12   as much as a successful infringement suit does. *See Fogerty,* 510 U.S. 517 at 114 ("[D]efendants

13   who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate

14   them to the same extent that plaintiffs are encouraged to litigate meritorious claims of

15   infringement.").

16        Defendants were successful in defending this action through the first trial. Then, the

17   Ninth Circuit remanded this case, in part, on a matter of first impression – whether a copyright

18   owner's registration of a derivative work also registers the included elements of an original,

19   unregistered work. *See* Dkt. 130. Plaintiffs success was limited to a jury finding only that

20   Defendants copied portions of the Managing Complex Change chart that were included in the

21   copyright registrations of a derivative work. Plaintiffs were awarded $8,000.00.

22        This lawsuit required Defendants to litigate the Domino Change Model, a work that

23   expressed ideas in a new way, which is precisely the purpose of the Copyright Act. As such,

24   Defendants' litigation of the Domino Change Model promoted the purposes of the Copyright

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 13

Act. Defendants' pursuit of meritorious defenses resulted in encouraging the creation of works and allowing others to build on those works. Plaintiffs had success in establishing that a derivative work could register an original, unregistered work and was successful in proving the elements of the original work had been copied. The Court finds that both positions furthered the purposes of the Copyright Act. Therefore, this factor is neutral and does not weigh in favor of awarding fees to Plaintiffs.

vi.  Chilling Effect

Finally, the Court notes denying a fee award in this case will not impose a chilling effect that is too great or impose an inequitable burden on an impecunious plaintiff. This case has been pending for 4.5 years. There have been two trials, which resulted in a verdict of only $8,000.00 in damages. Plaintiffs were unable to prove (1) Lippitt obtained a copyright registration for her Managing Complex Change chart, (2) Defendants accessed the Aligning for Success Chart; and (3) that the Domino Change Model constituted copyright infringement. Plaintiffs had limited success in this case. Both Plaintiffs and Defendants are similarly situated in that the named parties are the respective business and business owner. Plaintiffs' request for approximately $950,000 in attorneys' fees without having complete success in this case would in fact chill future litigants from defending claims such as this. For these reasons, the Court finds the chilling effect of the fee award requested in this case far exceeds the potential chilling effect a plaintiff might feel in pursuing a meritorious copyright action. Therefore, this factor weighs against an attorneys' fee award.

vii. Conclusion

The Court has considered the factors outlined by this Circuit. After balancing the relevant factors, the Court finds an award of "full costs," including "a reasonable attorneys' fee," is not warranted under § 505 in this case.

## IV.    Sanctions for Filing Motion

Plaintiffs request this Court sanction Defendants for filing a frivolous Motion for Attorney's Fees. *See* Dkt. 207. While the Court did not find Defendants were a prevailing party, the Court does not find Defendants' position was so frivolous, unreasonable, or vexatious as to warrant sanctions. Here, both parties prevailed on substantive claims that affected the material legal relationship between the parties. Defendants prevailed on a claim that the Domino Change Model infringed on Plaintiffs' copyright.[5] Defendants also prevailed on Plaintiffs' claim that Defendants infringed on Plaintiffs' Aligning Chart. Defendants, therefore, were able to continue publishing a book containing the Domino Change Model and no longer have a concern about being sued for copyright infringement related to the Domino Change Model or the Aligning for Success chart. The Court has denied Defendants' motion for fees, but this finding does not minimize the arguments raised by Defendants or make their Motion frivolous. Therefore, the Court denies Plaintiffs' request to sanction Defendants.

## V.    Costs

Plaintiffs and Defendants also move for costs. *See* Dkts. 199, 204. Plaintiffs only requested costs pursuant to 17 U.S.C. § 505. Under § 505, costs are award to the prevailing party only within the Court's discretion. As discussed above, the Court finds Plaintiffs have not shown

---

[5] The Court finds the Domino Change Model claim was a separate and distinct copyright claim. Plaintiffs even concede the claim related to the Domino Change Model was a claim directed at a separate set of accused works. *See* Dkt. 207 at 5, n.3.

1   costs are warranted under § 505. Rather, the Court finds both parties should pay their own pre-

2   offer costs. Defendants, however, are entitled to post-offer costs under Rule 68(d). Under Rule

3   68(d), "[i]f the judgment that the offeree finally obtains is not more favorable than the

4   unaccepted offer, the offeree must pay the costs incurred after the offer was made." Evidence

5   shows Defendants made an offer of judgment of $30,000.00 on July 27, 2023 and an offer of

6   judgment of $150,000.00 on August 14, 2023. Dkts. 201-1, 201-2. Plaintiffs received a judgment

7   of $8,000.00. As Plaintiffs did not obtain a judgment more favorable than either unaccepted

8   offer, Plaintiffs must pay Defendants' costs incurred after July 27, 2023. Therefore, Defendants

9   are entitled to costs in the amount of $3,993.03 (costs awarded for supplemental deposition of

10   Lippitt - $1,082.45, costs of copies - $2,276.08, and costs for trial transcripts - $634.50).[6]

11   **VI.   Conclusion**

12   For the reasons articulated in this Order, the Court finds an award of attorneys' fees is not

13   warranted this case. Accordingly, the Motions (Dkts. 197, 202) are denied. Plaintiffs' Motion for

14   Bill of Costs (Dkt. 204) is denied. Defendants' Motion for Bill of Costs (Dkt. 199) is granted-in-

15   part as follows:  Defendants are awarded post-offer costs in the amount of $3,993.03.

16   Dated this 5th day of August, 2024.

18   David W. Christel
19   United States Magistrate Judge

[6] The Court also notes that the Ninth Circuit imposed costs against Defendants in the amount of $885.00. *See* Dkt. 131 (costs were taxed against Defendants in the amount of $885.00). Plaintiffs assert Defendants have not yet paid the costs. Plaintiffs request this Court direct Defendants to pay the costs imposed by the Ninth Circuit. Plaintiffs, however, have not cited to any legal authority showing this Court should further direct Defendants to pay the costs imposed by the Ninth Circuit.

ORDER ON MOTIONS FOR ATTORNEY FEES
AND COSTS - 16